# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

COLTON BRAUER, *et al.*,

    Plaintiffs,

v.

PENSKE TRUCK LEASING CO., LIMITED PARTNERSHIP, *et al.*,

    Defendants.

Case No. 2:10-cv-283-LDG (GWF)

**ORDER**

    The plaintiffs, Colton and Nicole Brauer, filed and served a complaint for negligence and gross negligence against defendant Penske Truck Leasing Company, L.P. As requested by the parties, discovery cut-off was February 18, 2011, and the last day for filing dispositive motions was March 18, 2011. Neither party requested an extension of these dates. On March 17, 2011, Penske timely moved for summary judgment (#42). The Brauers oppose the motion (#46). Having considered the pleadings and papers, and all competent evidence submitted by the parties, the Court will grant the motion and dismiss this action.

Motion for Summary Judgment

In considering a motion for summary judgment, the court performs "the threshold inquiry of determining whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). To succeed on a motion for summary judgment, the moving party must show (1) the lack of a genuine issue of any material fact, and (2) that the court may grant judgment as a matter of law. Fed. R. Civ. Pro. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

A material fact is one required to prove a basic element of a claim. *Anderson,* 477 U.S. at 248. The failure to show a fact essential to one element, however, "necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323.

"[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id*. "Of course, a party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323. As such, when the non-moving party bears the initial burden of proving, at trial, the claim or defense that the motion for summary judgment places in issue, the moving party can meet its initial burden on summary judgment "by 'showing'–that is, pointing out to the district court–that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325. Conversely, when the burden of proof at trial rests on the party

moving for summary judgment, then in moving for summary judgment the party must establish each element of its case.

Once the moving party meets its initial burden on summary judgment, the non-moving party must submit facts showing a genuine issue of material fact. Fed. R. Civ. Pro. 56(e). As summary judgment allows a court "to isolate and dispose of factually unsupported claims or defenses," *Celotex*, 477 U.S. at 323-24, the court construes the evidence before it "in the light most favorable to the opposing party." *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 157 (1970). The allegations or denials of a pleading, however, will not defeat a well-founded motion. Fed. R. Civ. Pro. 56(e); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986).

Background

Colton rented a Penske moving van in Alabama, which the Brauers loaded with their property. Several days later, they parked the moving van across the street in front of the house of Nicole's mother in Las Vegas in the early evening of March 8, 2009. Early the next day or on March 10, they discovered the moving van was stolen.[1] The stolen moving van was later located, and still contained some of their property. The stolen moving van was taken to a Penske facility where their property that remained in the stolen moving van was transferred into a replacement moving van by a swap crew.[2] Colton asked an unidentified individual (who worked for the swap crew) how the moving van could be stolen as it lacked evidence of a break-in or having been hot-wired. The individual answered that thefts of Penske moving vans was not uncommon as "it was well known that practically any key that could fit into the ignition switch could open and start a Penske van." Nobody at the

---

[1] The complaint alleges the moving van was discovered missing on March 10. In his deposition, however, Colton testified that he last saw the moving van on March 8, and that the next morning his mother-in-law discovered the moving van was missing.

[2] It appears that the swap crew were not Penske employees, but were employed by a different company.

facility, however, actually demonstrated how to open and start a Penske moving van with a key other than for the moving van, either on the stolen moving van, the replacement Penske moving van, or any other Penske moving van at the facility.

On the following day, the Brauers successfully entered and started both the replacement Penske moving van and another Penske moving van with keys for a Volkswagen Passat and a Chrysler Sebring.

The Brauers claim that Penske was negligent in providing them with a moving vehicle that lacked the security devices expected by a reasonable person, and that Penske was grossly negligent as its negligence was with deliberate intention and wanton disregard for the Brauers.

Analysis

The crux of Penske's motion is that (a) the Brauers lack evidence that Penske was on notice that its vehicles could be entered and started in the manner alleged by the Brauers, and (b) the Brauers lack evidence that the moving van they rented (and that was stolen) lacked the security devices that a reasonable person would expect to find on a moving van. As such, Penske argues that the Brauers cannot show that Penske owed them a duty of care, and even if they did, the Brauers cannot show that the moving van rented by Colton (and subsequently stolen) lacked the security devices that would have breached a duty to provide them with a reasonably secure vehicle.[3]

The crux of the Brauers' response is that, after the theft, the stolen moving van lacked any sign that it had been broken into, that the ignition lacked any sign that it had been tampered with, that Colton was told that virtually any key could be used to open and start the vehicle, and that the Brauers actually opened and started two other Penske

---

[3] Penske also argues that the Brauers lack any evidence that Penske's alleged breach proximately caused the loss of the Brauers' property, but that the criminal acts of an unknown third-party (or parties) was a superseding intervening cause of the loss of property.

4

moving vans with keys for their own vehicles.  They further argue that Penske has "refused to say" what their knowledge is regarding the susceptibility of the moving vans to be entered and started with keys for other vehicles.

Summary judgment is appropriate as the Brauers have not offered evidence raising triable issues as to several material facts. The Brauers do not direct the Court's attention to any evidence that Penske had knowledge or notice that the type of vehicle of the stolen moving van was susceptible to being opened or started by a key other than for that vehicle. The evidence that the Brauers entered and opened two Penske moving vans with two keys for other vehicles may raise an issue as to whether the vehicles were susceptible to this type of entry and ignition.  The issue raised by Penske's motion, however, is whether Penske had knowledge of this susceptibility.  On that issue, the Brauers have not offered any evidence.  (The Brauers do not argue that the statements of the unidentified individual can be attributed to Penske, nor does the record have any evidence permitting such an inference.)

The Brauers have not even offered evidence that the alleged susceptibility was widely known.  Colton's hearsay testimony of a statement of an unidentified individual is not competent evidence on this issue.  Rather, the only competent evidence on this issue is that proffered by Penske, in which the police officers responding to the stolen moving van testified that they lacked any awareness that Penske moving vans were susceptible to being opened and started by a key of a different vehicle.

Further, the record lacks any evidence that the stolen moving van lacked a security device that a reasonable person would expect on a moving van.  The Brauers have not offered any evidence regarding what constitutes a security device that a reasonable person would expect to be installed on moving vans.  The Brauers have not offered any evidence that such a security device was not actually installed on the stolen moving van.

5

1    Further, the Brauers have not offered any evidence as to how the stolen moving van
2 was entered and started.  The Brauers have not offered any evidence that the person who
3 stole the moving van accomplished the crime by entering and starting the vehicle using the
4 key of a different vehicle.  The Brauers have not offered any evidence that, after the stolen
5 moving van was recovered, the stolen moving van could be entered and started using the
6 key of a different vehicle.  The only evidence in the record regarding the stolen moving van
7 was Colton's testimony, proffered by Penske, that the Brauers locked the moving van with
8 the vehicle's key, and that the locks did not appear damaged.  At most, the evidence
9 permits an inference that vehicle was stolen using a unknown method that did not damage
10 the locks or ignition system.  The evidence does not permit an inference that Penske had
11 notice of the unknown method, and failed to provide a security device (that a reasonable
12 person would have expected) that would have defeated the theft.
13    Finally, the Brauers concede that Penske would have met its burden of providing a
14 reasonably secure vehicle if the vehicle had been "broken into" or the ignition system had
15 been broken or bypassed in some way.  The concession emphasizes the flaw in the
16 Brauers' opposition.  The Brauers' claims rest upon a theory that the Penske moving van
17 they rented had a particular defect, that Penske knew of this defect, that the unknown thief
18 also knew of this defect, and that the thief relied upon this specific defect (rather than upon
19 some other method) to steal the moving van.  The record, however, lacks any evidence
20 that the thief relied upon the defect to steal the van.  The Brauers have not offered any
21 evidence that they have identified the only method for a thief to open and start a Penske
22 moving van without damaging the ignition system.  At most, the Brauers invite the trier-of-
23 fact to speculate regarding the thief's knowledge and methods to steal moving vans without
24 damage to locks or ignition systems.
25    Accordingly,
26

6

1  THE COURT **ORDERS** that Penske Truck Leasing Company, L.P.'s Motion for
2  Summary Judgment (#42) is GRANTED.

4  DATED this ____ day of January, 2012.

_____
Lloyd D. George
United States District Judge